**Kevin W. Goering**
NORWICK SCHAD & GOERING
110 East 59th Street
New York NY 10022
(917) 841-8750
kgoering@norwickschad.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

AVANT CAPITAL PARTNERS LLC,                    Civil Action No. 16 Civ. 3359

                                    Plaintiff,

               -against-                    **COMPLAINT FOR DAMAGES**
                                    **FOR BREACH OF CONTRACT**
W108 DEVELOPMENT LLC and ORLY
GILAT,

                                    **JURY TRIAL DEMANDED**

                           Defendants.
------------------------------------X

       Plaintiff, by and through its undersigned attorney, as and for its Complaint

herein, alleges as follows:

### NATURE OF THE ACTION

       1.     This is an action for damages for breach of contract arising out of

two written agreements to make a commercial real estate loan in the principal

amount of $8,000,000.   The Plaintiff is a company located in Stamford

Connecticut that makes commercial mortgage loans in the New York

metropolitan area.  The Defendants are the corporate owner of a building at 324-

326 West 108th Street in New York City, and the company's sophisticated

1

principal and Organizer, Orly Gilat. Plaintiff alleges that the Defendants breached their obligations under an exclusivity clause to negotiate and close a bridge loan transaction for the property in 2015 and again in 2016. Plaintiff seeks damages herein for those breaches.

## THE PARTIES

2.      Plaintiff Avant Capital Partners LLC is a Delaware Limited Liability Company  with its principal place of business at 700 Canal Street, 5th Floor, Stamford, Connecticut 06902. All of its members reside in the State of Connecticut.

3.      Upon information and belief, Defendant Orly Gilat is a citizen of the State of New York who resides at 2025 Broadway #12 K, New York NY 10023.

4.      Defendant W108 Development LLC is a New York Limited Liability Company registered with the New York Secretary of State with its principal place of business at 2025 Broadway #12K, New York NY 10023. Upon information and belief, no member of this LLC resides in Connecticut.


## JURISDICTION AND VENUE

5.      Jurisdiction is based upon diversity of citizenship among the parties.  The amount in controversy exceeds $75,000, exclusive of costs.  This Court thus has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §  1332.

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 (b) (1).

## FACTUAL ALLEGATIONS

7.      The history of this matter begins in 2015, when Defendant Gilat contacted the Plaintiff regarding the possibility of obtaining a commercial bridge loan relating to a building in New York City.

8.      After a series of negotiations between the parties in which Defendant Gilat was advised and represented by counsel, the parties entered into a term sheet agreement on July 27, 2015 (the "2015 Term Sheet").   A copy of the 2015 Term Sheet is annexed hereto as exhibit A and incorporated by reference herein.

9.      The 2015 Term Sheet provided for an initial loan in the amount of eight million dollars.  The interest rate was 9% and the term of the loan was to be six months.  There was to be an origination fee of 1% and an exit fee of 1 ¼% .

10.      The 2015 Term Sheet provided as follows:

> "Exclusivity.  Each of Borrower, Key Principal and Guarantor agree that commencing upon the execution of this summary of terms, Borrower, Key Principal and Guarantor will work exclusively with Lender to procure the Loan and agrees not to, and will cause its Key Principals and affiliates not to, obtain or attempt to arrange financing for the Property with any party other than Lender. In the event Borrower,  Key Principal or Guarantor or an affiliate or controlled entity of Borrower, Key Principal or Guarantor obtains

debt financing for the Property from a source other than Lender, Lender shall be deemed to have earned a Break-up Fee and shall be entitled to be paid the same, in the amount of two percent (2.0%) of the Loan Amount (the "Break-up Fee") which constitutes a reasonable estimate of Lender's damages and which shall constitute liquidated damages.  The Break-up Fee is in addition to the Deposit which shall be retained by Lender.

11.    The 2015 Term Sheet provided further:

This summary of terms is non-binding, for discussion purposes only and is neither an express nor implied commitment by Avant, Lender or any of its affiliates to lend  or  otherwise provide or assist in providing the financing described herein.

This term  sheet  does  not  purport  to summarize  all  the terms, conditions, representations,  warranties  and  other provisions with respect to the transactions  referred  to herein. Avant  and Lender will  have  no  legal  obligation  whatsoever to  Borrower,  Key Principal  or  Guarantor  or any  other person  unless  and  until definitive  loan  documentation  is executed by the parties. Avant and Lender may withdraw this summary of terms  as a  basis  for discussion  and elect not to make the Loan (or to further  revise this summary of terms) at   any time, for any or no reason.

Notwithstanding  the foregoing, from  and  after  the execution of this term sheet, Paragraphs entitled "Deposit,"Indemnification," "Exclusivity," "Confidentiality" and "Non-Binding Term Sheet" shall which shall be binding on the Borrower, Key Principal and Guarantor.

The Loan  and  this summary of terms  shall be governed  under the law of the State of New York.

12.     The "Key Principal and Guarantor" referred to in the 2015 Term Sheet is Defendant Orly Gilat.

13.     Defendants breached the 2015 Term Sheet by refusing to proceed with the loan and by obtaining debt financing from another source.  As described below, Defendants have acknowledged they owed the break-up fee.

14.     Several months later, the parties renewed their discussions regarding a possible new bridge loan.  On or about January 22, 2016, after a series of negotiations, the parties entered into another term sheet (the "2016 Term Sheet") which is annexed hereto as Exhibit B and incorporated by reference herein. The 2016 Term Sheet is similar to the 2015 Term Sheet in most respects.

15.     In the 2016 Term Sheet, Orly Gilat is designated not only as the "Key Principal" and "Guarantor,"  but is also described as the manager and 99% owner of the borrower. The property which is the subject of the transaction is located at 324-326 West 108th Street in New York NY.   As with the 2015 transaction, the bridge loan was to be in the amount of eight million dollars with a 1% origination fee and a 1 ¼% exit fee.

16.     The 2016 Term Sheet provides in part as follows:

> Each of Borrower, Key Principal and Guarantor agree that commencing upon the execution of this summary of terms, Borrower, Key Principal and Guarantor will work exclusively with Lender to procure the Loan and agrees not to, and will cause its Key Principals and affiliates not to, obtain or attempt to obtain debt financing for the Property from a source other than Lender. In the event Borrower, Key Principal and Guarantor obtains dent [debt]  financing for the Property from a source other than Lender, including without limitation, a refinancing with its existing lender

(which shall include any extension of the existing loan), Lender shall be deemed to have earned, and shall be paid, a Break-up Fee in the amount of $160,000, representing of two percent (2.0%) of the Loan Amount (the "Break- up Fee") which constitutes a reasonable estimate of Lender's damages and which shall constitute liquidated damages. The Break-up Fee is in addition to the Deposit which shall be retained by Lender. Guarantor, by her execution of this summary of terms (i) acknowledges that a break-up fee (the "Prior Fee") was earned by Lender as a result of a breach by Borrower of the exclusivity provisions contained in the summary of terms dated July 27, 2015; and (ii) in consideration of Lender waving its right to be paid the Prior Fee, agrees to be personally liable for the payment of the Break-Up Fee, in the event it is earned by Lender.

17.    Paragraph 31 0f the 2016 Term Sheet is entitled "Indemnification" and provides as follows:

Borrower agrees, whether or not any of the transactions set forth in this term sheet or contemplated hereby are consummated, to indemnify and hold Avant and Lender and its affiliates harmless, and to reimburse Lender and its affiliates for (i) all out-of-pocket costs and expenses relating to the Loan, including the reasonable fees and disbursements of Avant's and Lender's attorneys and advisors; (ii) any costs, expenses and damages to Avant and Lender and its affiliates resulting from any action, proceeding or investigation seeking to enjoin or otherwise resulting from any matter referred to in this term sheet; and (iii) any claim for brokers or finders fees based on actual or alleged dealings with Borrower or any of its respective affiliates.

18.    Paragraph 34 of the 2016 Term Sheet provides as follows:

This summary of terms is non-binding, for discussion purposes only and is neither an express nor implied commitment by Avant, Lender or any of its affiliates to lend or otherwise provide or assist in providing the financing described herein.

This term sheet does not purport to summarize all the terms, conditions, representations, warranties and other provisions with respect to the transactions referred to herein. Avant and Lender will have no legal obligation whatsoever to Borrower, Key Principal or Guarantor or any other person unless and until definitive loan documentation is executed by the parties. Avant and Lender may withdraw this summary of terms as a basis for discussion and elect not to make the Loan (or to further revise this summary of terms) at any time, for any or no reason.

Notwithstanding the foregoing, from and after the execution of this term sheet, Paragraphs entitled "Deposit," "Indemnification," "Exclusivity," "Confidentiality" and "Non- Binding Term Sheet" which shall be binding on the Borrower,

19.     In late January and early February 2016, Defendants breached their obligations to negotiate exclusively with the plaintiff by obtaining debt financing from another lender or by refinancing or extending the then existing loan.  On February 9, 2016, a letter demanding payment of the break-up fee was sent to Defendant Gilat who acknowledged its receipt.

## FIRST CLAIM FOR RELIEF
## Breach of Contract

20.     Plaintiff incorporates herein by reference all allegations contained in paragraphs 1 through 19 above as if fully set forth herein.

21.     Plaintiff has duly performed or satisfied all conditions, promises and obligations required to be performed or satisfied by it in accordance with the terms and conditions of the contracts as embodied in the 2015 and 2016 Term Sheets.

22.     Despite due demand, Defendants have failed to pay Plaintiff the Break-up fee, thereby breaching the parties' contract and the Defendants' independent duty of good faith and fair dealing.

23.     Pursuant to the 2015 and 2016 Term Sheets, Plaintiff is entitled to a Break-up fee in the amount of $160,000, plus its costs and attorneys' fees incurred in collecting this amount.

24.     In the alternative, plaintiff is entitled to its actual damages sustained as a result of defendants' willful breach of the 2015 and 2016 term sheets plus its reasonable costs and attorneys' fees.

25.     As a direct and proximate result of Defendants' breach, Plaintiff has suffered damages in an amount to be proven at trial.

**SECOND CLAIM FOR RELIEF**
Breach of Guarantee by Defendant Gilat

26.     Plaintiff incorporates herein by reference all allegations contained in paragraphs 1 through 25 above as if fully set forth herein.

27.     Pursuant to the 2016 term sheet, Defendant Gilat individually guaranteed the corporate Defendant's performance of the contract , including

any liability for the payment of the Break-up fee.  Despite repeated demands, Defendant Gilat has failed to make payment of the Break-up fee.

28.    As a direct and proximate result of Defendants' breach, Plaintiff has suffered damages in an amount to be proven at trial.

## THIRD CLAIM FOR RELIEF

## Breach of Duty of Good Faith and Fair Dealing

29.    Plaintiff incorporates herein by reference all allegations contained in paragraphs 1 through 28 above as if fully set forth herein.

30.    Both term sheets provide for the application of New York law. Pursuant to New York law, every contract contains an implied duty of good faith and fair dealing.  By failing to proceed with the bridge loan in this case, defendants breached that duty.

31.    As a direct and proximate result of Defendants' breach , Plaintiff has suffered damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment in its favor as hereinabove stated, for the costs of the action, for its reasonable attorneys' fees and for such other and further relief as the Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a

trial by jury of all issues so triable.

Dated:  New York, New York
        May 5, 2016

                                    NORWICK, SCHAD & GOERING


                        By:     /s/Kevin W. Goering
                                Kevin W. Goering (KG 5859)
                                NORWICK, SCHAD & GOERING
                                110 East 59th Street
                                22nd Floor
                                New York, New York 10022
                                Tel.: (917) 841-8750

                                kgoering@norwickschad.com

                                Attorneys for Plaintiff

# EXHIBIT A

108 River Road, 2ⁿᵈ Floor
Greenwich, CT 06807
Phone: (203) 930-3400
Fax: (646) 205-4288
www.avant-capital.com



July 27, 2015

Ms. Orly Gilat
W108 Development LLC
2025 Broadway #12K
New York, NY 10023

Re:     324-326 West 108ᵗʰ Street
        New York, NY

Dear Orly,

The following is a preliminary summary of loan terms for the financing of the referenced property:

| | | |
|---|---|---|
| 1. | Lender | A limited liability company to be formed by an affiliate of Avant Capital Partners, LLC ("Avant" or "Lender"). |
| 2. | Borrower | W108 Development LLC, a single-purpose bankruptcy-remote entity which shall be acceptable to Lender (the "Borrower"). |
| 3. | Key Principal | Ms. Orly Gilat ("Key Principal") who is also the Manager and 99% owner of Borrower. |
| 4. | Guarantor(s) | Ms. Orly Gilat and any other owner, principal member or partner of Borrower with 20% or greater direct or indirect ownership interest in Borrower (collectively, the "Guarantors"). |
| 5. | Recourse | The Loan shall be fully recourse to Borrower and Guarantors. |
| 6. | Property | 324-326 West 108ᵗʰ Street, New York, NY 10025 (the "Property"). |
| 7. | Loan Amount | The lesser of (i) $8,000,000; or (ii) 70% of Avant's underwritten valuation. The loan proceeds will be reduced by any closing costs and reserves. The Loan will be fully funded at closing. |
| 8. | Interest Rate | 9.00%; 360-day convention |
| 9. | Amortization | None |
| 10. | Term | Six (6) months |
| 11. | Release Provisions | None |
| 12. | Extension | One six (6) month extension subject to Borrower satisfying the |

Ms. Orly Gilat
July 27, 2015
Page 2

following conditions:

    (i)     No defaults;

    (ii)    Payment of one percent (1%) extension fee;

    (iii)   Funding of an additional six (6) months of interest, real estate and insurance reserves;

    (iv)   Providing updated financial statements of Borrower, Key Principal and Guarantor(s);

    (v)    Updated appraisal; and

    (vi)   Loan-to-value ratio of not more than 70%.

13.   **Origination Fee**   Borrower shall pay Lender an origination fee equal to one and one-quarter percent (1.25%) of the Loan Amount which shall be paid at the closing of the Loan (the "Origination Fee").

14.   **Exit Fee**   Borrower shall pay Lender an exit fee equal to one percent (1%) of the Loan Amount which shall be paid upon the repayment of the Loan (the "Exit Fee").

15.   **Reserves**   Lender shall establish at the closing, in a non interest bearing account, the following reserves from the proceeds of the Loan:

    (i)     Interest Reserve.  Equal to six (6) months of interest on the Loan;

    (ii)    Real Estate Tax Reserve.  Equal to twelve (12) months of real estate taxes; and

    (iii)   Insurance Reserve.  Equal to twelve (12) months of insurance premiums; insurance reserve is waived if Borrower provides satisfactory evidence that the premium has been paid.

16.   **Due Diligence Deposit**   Upon execution of this summary of terms, Borrower or Key Principal will pay to Avant a non-refundable due diligence deposit in the amount of Thirty Five Thousand Dollars ($35,000) (the "Deposit"). The Deposit shall be wired to Avant per the wire instructions in Exhibit A. The Deposit will be used by Avant to pay for its expenses related to underwriting of the Loan, including but not limited to:

    (i)     Avant's non-refundable application fee in the amount of $5,000;

    (ii)    Appraisal;

    (iii)   Environmental review;

    (iv)   Property condition, construction and architectural review;

    (v)    Background check of Borrower, Key Principal and Guarantor;

    (vi)   Legal fees; and

    (vii)  Other miscellaneous fees and expenses of Avant, including bank fees, filing fees, and servicing fees.

Ms. Orly Gilat
July 27, 2015
Page 3

Borrower, Key Principal and Guarantor understand that the Deposit represents Avant's *preliminary estimate* of Avant's costs, and Borrower, Key Principal and Guarantor agree to pay all expenses of Avant whether or not the Loan closes. The Deposit will be credited to the Borrower on the closing statement. Avant may request an additional Deposit if the Deposit is insufficient to pay for Avant's estimated expenses on account of unanticipated transaction complexity, delay or additional legal expenses. If Avant's investment committee does not approve the Loan, Avant will refund to Borrower or Key Principal the Deposit less any amounts incurred by Avant.

17.  Mortgage and Security
The Loan will be secured by (i) a first priority mortgage lien on the Property; (ii) an assignment of leases and rents; (iii) an assignment of all permits, contracts and agreements (including management, rental and other operating agreements, ground leases and licenses) pertaining to the Property; (iv) a pledge of membership interests in Borrower; and (v) a first security interest in all furnishing, fixtures and equipment located within the Property owned by Borrower.

18.  Use of Funds
Repayment of first mortgage in the principal amount of $7,637,500.

19.  Prepayment
Borrower shall be permitted to repay the Loan in full at any time upon thirty (30) days written notice to Lender subject to Call Protection.

20.  Call Protection
Lender shall have received a minimum of six (6) months interest payments upon any prepayment of the Loan. Call Protection shall be waived in the event Lender provides a construction loan as provided for in Section 28.

21.  Subordinate Financing
Borrower, Guarantor or Key Principal shall not pledge, encumber or otherwise finance the Property or their ownership interests in the Property.

22.  Assumption
The Loan is not assumable.

23.  Transfers
No transfer of the Property or any direct or indirect interest in the Borrower is permitted during the term of the Loan.

24.  Lender Transfer
Lender shall have the right to sell, transfer or participate an interest in the Loan, to enter into one or more secondary market transactions with respect to the Loan, and to structure and restructure all or any part of the Loan into multiple tranches. Borrower will enter into any acknowledgements or consents required by any transferee, participant or secondary market participant.

25.  Lender Approvals
Lender shall approve all budgets, leases, capital improvements, and any change in property use or zoning.

Ms. Orly Gilat
July 27, 2015
Page 4

26. **Environmental Indemnification**

Borrower, Key Principal(s) and Guarantor(s) will execute an environmental indemnification agreement in favor of Lender.

27. **Lock Box Account**

Not required.

28. **Construction Loan**

Lender will be granted a right of first refusal to provide a construction loan for the redevelopment of the property into condominiums, but is under no obligation to provide such financing. A preliminary non-binding summary of terms for a construction loan is attached as **Exhibit B.** Lender will refine its underwriting, loan structure and terms when Borrower completes its design development, obtains construction costs and finalizes its equity capitalization, including EB5 financing. The terms set forth in **Exhibit B** is not a commitment to lend and no commitment is intended by the summary of potential terms set forth in **Exhibit B** which may change or be withdrawn by Lender in its sole discretion.

29. **Closing Date**

Thirty (30) days from the date Borrower, Key Principal(s) and Guarantor(s) provide all requested due diligence information set forth on an Underwriting Check List to be delivered to Borrower within one (1) day of receipt of an executed copy of this summary of terms and Deposit. Borrower, Key Principal and Guarantor understand that Lender may withdraw this summary of terms if (i) the Loan fails to close within the time frame set forth above; (ii) the Borrower fails to provide the due diligence information; (ii) Borrower does not fulfill all of the closing requirements of the Lender. Lender and Borrower are targeting a closing date of August 31, 2015, subject to the provisions above.

30. **Closing Conditions**

Closing of the Loan is subject to the following conditions:

(i) Avant's satisfactory completion of due diligence review of the Property, the Borrower, Key Principal and Guarantor, and its affiliates;

(ii) Review of a detailed development budget that sets forth all hard and soft costs for the project in line item detail;

(iii) Evidence of payment of all hard and soft cost paid by Borrower, Key Principal or Guarantors from project inception to the closing of the Loan;

(iv) Review of preliminary architectural plans and specifications to confirm re-development feasibility;

(v) No material adverse change in the fair market value or condition of the Property, the Borrower, Key Principal and Guarantor, and its affiliates; prior to closing;

Ms. Orly Gilat
July 27, 2015
Page 5

    (vi)    Avant's satisfactory review of zoning and entitlements of the Property satisfactory to Lender;

    (vii)   Avant's Satisfactory review of title and updated survey;

    (viii)  Avant's satisfactory review of environmental and property condition reports on the Property;

    (ix)    Avant's satisfactory review of property insurance and the receipt of a certificate of insurance naming Lender as an additional insured;

    (x)    Avant's receipt and review of appraisal report acceptable to Lender;

    (xi)    Avant's receipt of such other business credit or legal approvals as Lender shall reasonably deem necessary and appropriate;

    (xii)   Execution of definitive loan documentation by Borrower and Guarantor in form and substance satisfactory to Avant and its legal counsel; and

    (xiii)  Approval by Avant's investment committee.

31.    **Brokers**    None. Borrower hereby agrees to indemnify and hold harmless Avant and Lender from and against any claim by any other broker, finder, consultant or like agent or any person or entity for commissions or other compensation for bringing about this transaction where such claim is based in whole or in part on dealings with Borrower or any affiliate thereof, and from all expenses of Avant and Lender in resisting such claim, including, without limitation, reasonable attorneys' fees and disbursements.

32.    **Indemnification**    Borrower agrees, whether or not any of the transactions set forth in this term sheet or contemplated hereby are consummated, to indemnify and hold Avant and Lender and its affiliates harmless, and to reimburse Lender and its affiliates for (i) all out-of-pocket costs and expenses relating to the Loan, including the reasonable fees and disbursements of Avant's and Lender's attorneys and advisors; (ii) any costs, expenses and damages to Avant and Lender and its affiliates resulting from any action, proceeding or investigation seeking to enjoin or otherwise resulting from any matter referred to in this term sheet; and (iii) any claim for brokers or finders fees based on actual or alleged dealings with Borrower or any of its respective affiliates.

33.    **Exclusivity**    Each of Borrower, Key Principal and Guarantor agree that commencing upon the execution of this summary of terms, Borrower, Key Principal and Guarantor will work exclusively with Lender to procure the Loan and agrees not to, and will cause its Key Principals and affiliates not to, obtain or attempt to arrange financing for the Property with any party other than Lender. In the event Borrower, Key Principal or Guarantor or an affiliate or controlled entity of Borrower, Key Principal or Guarantor obtains debt financing for the

Ms. Orly Gilat
July 27, 2015
Page 6

Property from a source other than Lender, Lender shall be deemed to have earned a Break-up Fee and shall be entitled to be paid the same, in the amount of two percent (2.0%) of the Loan Amount (the "Break-up Fee") which constitutes a reasonable estimate of Lender's damages and which shall constitute liquidated damages. The Break-up Fee is in addition to the Deposit which shall be retained by Lender.

34. Confidentiality

Borrower, Key Principal, Guarantor and their affiliates will keep this term sheet confidential and will not share this term sheet with any third party other than their attorneys, advisors and partners. Lender will keep confidential Borrower's business plans and information; however, Lender may share Borrower's business plan and information with its legal advisors, lenders, investors and professional advisors.

35. Non-Binding Term Sheet

**This summary of terms is non-binding, for discussion purposes only and is neither an express nor implied commitment by Avant, Lender or any of its affiliates to lend or otherwise provide or assist in providing the financing described herein.**

**This term sheet does not purport to summarize all the terms, conditions, representations, warranties and other provisions with respect to the transactions referred to herein. Avant and Lender will have no legal obligation whatsoever to Borrower, Key Principal or Guarantor or any other person unless and until definitive loan documentation is executed by the parties. Avant and Lender may withdraw this summary of terms as a basis for discussion and elect not to make the Loan (or to further revise this summary of terms) at any time, for any or no reason.**

**Notwithstanding the foregoing, from and after the execution of this term sheet, Paragraphs entitled "Deposit," "Indemnification," "Exclusivity," "Confidentiality" and "Non-Binding Term Sheet" shall which shall be binding on the Borrower, Key Principal and Guarantor.**

36. Governing Law

**The Loan and this summary of terms shall be governed under the law of the State of New York.**

Sincerely yours,

Avant Capital Partners LLC

Adam Luysterborghs
Partner

Ms. Orly Gilat
July 27, 2015
Page 7

Agreed to and acknowledged by:

W108 Development LLC

By: Orly Gilat
Its: Manager
Date: 7-27-15

As to Paragraph 33

By: Orly Gilat
Date: 7-27-15

108 River Road, 2nd Floor
Greenwich, CT 06807
Phone: (203) 930-3400
Fax. (646) 205-4288
www.avant-capital.com



*O. Gilf*

## Exhibit B

## Summary of Potential Terms for Construction Loan

| | |
|---|---|
| Overview: | This is a summary of potential indicative terms for a possible construction loan. Lender will refine its underwriting, loan structure and terms when Borrower completes its design development, obtains construction costs and finalizes its equity capitalization, including EB5 financing as described below. This is not a commitment to lend and no commitment is intended by this summary of potential terms which may change or be withdrawn by Lender in its sole discretion. |
| Lender: | Avant Capital Partners or its affiliate |
| Borrower: | W108 Development LLC, a single-purpose bankruptcy-remote entity which shall be acceptable to Lender (the "Borrower") |
| Property, Address, City, State, Zip: | 324-326 West 108th Street, New York, NY |
| Property Type: | 14-unit condominium containing 16,770 net salable square feet and 19,363 square feet gross square feet |
| Applicant/Guarantors: | Ms. Orly Gilat; any other owner, principal member or partner of Borrower with 20% or greater direct or indirect ownership interest in Borrower. |
| Borrower: | Single-purpose entity acceptable to Lender |
| Proposed Loan Amount: | Borrower plans to obtain financing under the EB5 program for up to $6 million (the "EB5 Financing"). If Borrower obtains the EB5 Financing, the Avant loan will be the lesser of (i) $8,000,0000 or (ii) 40% of project cost. EB5 Financing not to be secured by any mortgage on the Property, pledge of Borrower's ownership interest in the project, UCC filing or any security instrument of any kind or type. EB5 financing to be common equity. If Borrower does not obtain the EB5 Financing, Lender may evaluate alternative financing structures and terms. |
| Purpose of Loan: | Construction |
| Borrower Equity Investment: | Borrower shall have invested cash equity of not less than $12.3 million consisting of (i) the EB5 Financing, and (ii) Borrower |

Ms. Orly Gilat
July 27, 2015
Page 10

|  | cash equity of not less than $6.3 million. |
|---|---|
| Interest Rate: | 9.50% |
| Pay-rate | 7.00% |
| Accrual Rate | 2.50% |
| Origination Fee: | 1.00% |
| Exit Fee: | 1.00% |
| Fee Off-set: | 50% of Avant origination and exit fees paid under the $8 million interim loan to be credited against fees due under construction loan |
| Construction Monitoring Fee | Avant shall receive a $2,000 per month construction monitoring fee during the term of the Loan |
| Broker Fee: | None |
| Loan Term: | 24 months |
| Amortization: | Interest only |
| Extension Option: | One 6-month extension is available subject to the payment of a 1.00% extension fee and replenishment of reserves |
| Prepayment Penalty: | Twelve (12) month interest guarantee |
| Recourse/Guarantee: | Full recourse to the Borrower and Guarantors; completion guaranty provided by Borrower and Guarantors |
| Loan Funding: | The Loan proceeds will be fully funded at closing into a construction loan reserve. Lender will remit monthly progress payments to Borrower from construction reserve based on Lender's satisfactory review of application for payment, satisfactory review of lender's inspecting architect and receipt of lien releases in a form acceptable to Lender. |
| Reserves and Escrows: | 1) 24 months interest reserve;<br>2) 24 months real estate taxes;<br>3) 24 months of insurance premiums;<br>4) Construction reserve; amount TBD. |
| Application Deposit: | $30,000 |

Ms. Orly Gilat
July 27, 2015
Page 11

Special Conditions/Notes:

(i)      Construction loan subject to Avant's satisfactory completion of due diligence review of the Property, the Borrower, Key Principal and Guarantor, and its affiliates;

(ii)     Review of a detailed development budget that sets forth all hard and soft costs for the project in line item detail;

(iii)    Review of construction and unit sales timeline;

(iv)    Evidence of payment of all hard and soft cost paid by Borrower, Key Principal or Guarantors from project inception to the closing of the Loan;

(v)     A construction contract with a bonded general contractor acceptable to Lender;

(vi)    Copies of all executed sub-contracts with each sub-contractor;

(vii)    Review of any EB5 financing documentation;

(viii)   Lien releases from the general contractor and each sub-contractor for any work completed prior to closing;

(ix)    Copies of architectural plans and specifications;

(x)     A review of all government approvals and zoning satisfactory to Lender;

(xi)    Review of plans and specifications satisfactory to Lender;

(xii)    Review of a builder's risk insurance policy naming Lender as an additional insured;

(xiii)   Copy of all condominium documents;

(xiv)   Copy of a condominium offering plan approved by the State of New York;

(xv)    No material adverse change in the fair market value or condition of the Property, the Borrower, Key Principal and Guarantor, and its affiliates; prior to closing;

(xvi)   Avant's satisfactory review of zoning and entitlements of the Property satisfactory to Lender;

(xvii)   Avant's Satisfactory review of title and updated survey;

(xviii)   Avant's satisfactory review of environmental and property condition reports on the Property;

(xix)   Avant's satisfactory review of property insurance and the receipt of a certificate of insurance naming Lender as an additional insured;

(xx)    Avant's receipt and review of as-built appraisal report acceptable to Lender;

(xxi)   Avant's receipt of such other business credit or legal approvals as Lender shall reasonably deem necessary and appropriate;

(xxii)   Execution of definitive loan documentation by

Ms. Orly Gilat
July 27, 2015
Page 12

Borrower and Guarantor in form and substance
satisfactory to Avant and its legal counsel; and
(xxiii)  Approval by Avant's investment committee.

Ms. Orly Gilat
July 27, 2015
Page 8

## Exhibit A

---

### Wire Instructions:

First Republic Bank
93 Mason Street
Greenwich, CT 06830

AVANT Capital Partners LLC
Borrower Escrow Account
ABA: 321081669
Account: 80001877324
RE: 324-326 West 108th Street

---

Executed. RoA.

Will send confirmation as soon as
I get it.

Amy.

# EXHIBIT B

700 Canal Street, 5ᵗʰ Floor
Stamford, CT 06902
Phone: (203) 930-3400
Fax: (646) 205-4288
www.avant-capital.com



January 22, 2016

Ms. Orly Gilat
W108 Development LLC
2025 Broadway #12K
New York, NY 10023

Re:    324-326 West 108ᵗʰ Street
       New York, NY

Dear Orly,

The following is a preliminary summary of loan terms for the financing of the referenced property:

| | | |
|---|---|---|
| 1. | Lender | A limited liability company to be formed by an affiliate of Avant Capital Partners, LLC ("Avant" or "Lender"). |
| 2. | Borrower | W108 Development LLC, a single-purpose bankruptcy-remote entity which shall be acceptable to Lender (the "Borrower"). |
| 3. | Key Principal | Ms. Orly Gilat ("Key Principal") who is also the Manager and 99% owner of Borrower. |
| 4. | Guarantor(s) | Ms. Orly Gilat and any other owner, principal member or partner of Borrower with 20% or greater direct or indirect ownership interest in Borrower (collectively, the "Guarantors"). |
| 5. | Recourse | The Loan shall be fully recourse to Borrower and Guarantors. |
| 6. | Property | 324-326 West 108ᵗʰ Street, New York, NY 10025 (the "Property"). |
| 7. | Loan Amount | The lesser of (i) $8,000,000; or (ii) 70% of Avant's underwritten valuation. The loan proceeds will be reduced by any closing costs and reserves. The Loan will be fully funded at closing. |
| 8. | Interest Rate | 9.00%; interest at a rate of 7.0% will be paid current (the "Pay Rate") and 2.0% will accrue and be paid upon loan repayment. 360-day convention. |
| 9. | Amortization | None |
| 10. | Term | Twelve (12) months |
| 11. | Release Provisions | None |

O.G.

Ms. Orly Gilat
January 27, 2016
Page 2

12. Extension    Two (2) twelve (12) month extensions subject to Borrower satisfying the following conditions for each extension:

    (i)    No defaults;
    (ii)   Payment of one percent (1%) extension fee;
    (iii)  Funding of an additional twelve (12) months of interest, real estate and insurance reserves;
    (iv)  Providing updated financial statements of Borrower, Key Principal and Guarantor(s) acceptable to Lender;
    (v)   Updated appraisal; and
    (vi)  Loan-to-value ratio of not more than 70%.

13. Origination Fee    Borrower shall pay Lender an origination fee equal to one and one-quarter percent (1.25%) of the Loan Amount which shall be paid at the closing of the Loan (the "Origination Fee").

14. Exit Fee    Borrower shall pay Lender an exit fee equal to one percent (1%) of the Loan Amount which shall be paid upon the repayment of the Loan (the "Exit Fee").

15. Reserves    Lender shall establish at the closing, in a non interest bearing account, the following reserves from the proceeds of the Loan:

    (i)    Interest Reserve.  Equal to twelve (12) months of interest on the Loan at the Pay Rate;
    (ii)   Real Estate Tax Reserve.  Equal to twelve (12) months of real estate taxes; and
    (iii)  Insurance Reserve.  Equal to twelve (12) months of insurance premiums.

16. Due Diligence    Borrower or Key Principal has previously paid to Avant a non-
Deposit    refundable due diligence deposit in the amount of Thirty-Five Thousand Dollars ($35,000) (the "Deposit"). The Deposit will be used by Avant to pay for its expenses related to underwriting of the Loan, including but not limited to:

    (i)    Avant's non-refundable application fee in the amount of $5,000;
    (ii)   Appraisal;
    (iii)  Environmental review;
    (iv)  Property condition, construction and architectural review;
    (v)   Background check of Borrower, Key Principal and Guarantor;
    (vi)  Legal fees; and
    (vii)  Other miscellaneous fees and expenses of Avant, including bank fees, filing fees, and servicing fees.

O·G·

Ms. Orly Gilat
January 27, 2016
Page 3

Borrower, Key Principal and Guarantor understand that the Deposit represents Avant's *preliminary estimate* of Avant's costs, and Borrower, Key Principal and Guarantor agree to pay all expenses of Avant whether or not the Loan closes. The Deposit will be credited to the Borrower on the closing statement. Avant may request an additional Deposit if the Deposit is insufficient to pay for Avant's estimated expenses on account of unanticipated transaction complexity, delay or additional legal expenses.

17.  Mortgage and Security

The Loan will be secured by (i) a first priority mortgage lien on the Property; (ii) an assignment of leases and rents; (iii) an assignment of all permits, contracts and agreements (including management, rental and other operating agreements, ground leases and licenses) pertaining to the Property; (iv) a pledge of membership interests in Borrower; and (v) a first security interest in all furnishing, fixtures and equipment located within the Property owned by Borrower.

18.  Use of Funds

Repayment of first mortgage in the principal amount of $7,637,500.

19.  Prepayment

Borrower shall be permitted to repay the Loan in full at any time upon thirty (30) days written notice to Lender subject to Call Protection.

20.  Call Protection

Lender shall have received a minimum of twelve (12) months interest payments upon any prepayment of the Loan.

21.  Subordinate Financing

Borrower, Guarantor or Key Principal shall not pledge, encumber or otherwise finance the Property or their ownership interests in the Property.

22.  Assumption

The Loan is not assumable.

23.  Transfers

No transfer of the Property or any direct or indirect interest in the Borrower is permitted during the term of the Loan.

24.  Lender Transfer

Lender shall have the right to sell, transfer or participate an interest in the Loan, to enter into one or more secondary market transactions with respect to the Loan, and to structure and restructure all or any part of the Loan into multiple tranches. Borrower will enter into any acknowledgements or consents required by any transferee, participant or secondary market participant.

25.  Lender Approvals

Lender shall approve all budgets, leases, capital improvements, and any change in property use or zoning.

26.  Environmental Indemnification

Borrower, Key Principal(s) and Guarantor(s) will execute an environmental indemnification agreement in favor of Lender.

Ms. Orly Gilat
January 27, 2016
Page 4

27.  Lock Box        Not required.
     Account

28.  Closing Date    Thirty (30) days from the date Borrower, Key Principal(s) and
                     Guarantor(s) provide all requested due diligence information set forth
                     on an Underwriting Check List to be delivered to Borrower within
                     one (1) day of receipt of an executed copy of this summary of terms.
                     Borrower, Key Principal and Guarantor understand that Lender may
                     withdraw this summary of terms if (i) the Loan fails to close within
                     the time frame set forth above; (ii) the Borrower fails to provide the
                     due diligence information; (ii) Borrower does not fulfill all of the
                     closing requirements of the Lender.   Lender and Borrower are
                     targeting a closing date of February 12, 2016, subject to the
                     provisions above.

29.  Closing        Closing of the Loan is subject to the following conditions:
     Conditions
                     (i)     Avant's satisfactory completion of due diligence
                             review of the Property, the Borrower, Key Principal
                             and Guarantor, and its affiliates;
                     (ii)    Review of a detailed development budget that sets
                             forth all hard and soft costs for the project in line
                             item detail;
                     (iii)   Evidence of payment of all hard and soft cost paid
                             by Borrower, Key Principal or Guarantors from
                             project inception to the closing of the Loan;
                     (iv)    Review of preliminary architectural plans and
                             specifications to confirm re-development feasibility;
                     (v)     No material adverse change in the fair market value
                             or condition of the Property, the Borrower, Key
                             Principal and Guarantor, and its affiliates; prior to
                             closing;
                     (vi)    Avant's   satisfactory  review  of  zoning  and
                             entitlements of the Property satisfactory to Lender;
                     (vii)   Avant's Satisfactory review of title and updated
                             survey;
                     (viii)  Avant's satisfactory review of environmental and
                             property condition reports on the Property;
                     (ix)    Avant's satisfactory review of property insurance
                             and the receipt of a certificate of insurance naming
                             Lender as an additional insured;
                     (x)     Avant's receipt and review of appraisal report
                             acceptable to Lender;
                     (xi)    Avant's receipt of such other business credit or legal
                             approvals as Lender shall reasonably deem
                             necessary and appropriate;



Ms. Orly Gilat
January 27, 2016
Page 5

          (xii)     Execution of definitive loan documentation by
                      Borrower and Guarantor in form and substance
                      satisfactory to Avant and its legal counsel; and
          (xiii)    Approval by Avant's investment committee.

30.    Brokers          None. Borrower hereby agrees to indemnify and hold harmless Avant and Lender from and against any claim by any other broker, finder, consultant or like agent or any person or entity for commissions or other compensation for bringing about this transaction where such claim is based in whole or in part on dealings with Borrower or any affiliate thereof, and from all expenses of Avant and Lender in resisting such claim, including, without limitation, reasonable attorneys' fees and disbursements.

31.    Indemnification    Borrower agrees, whether or not any of the transactions set forth in this term sheet or contemplated hereby are consummated, to indemnify and hold Avant and Lender and its affiliates harmless, and to reimburse Lender and its affiliates for (i) all out-of-pocket costs and expenses relating to the Loan, including the reasonable fees and disbursements of Avant's and Lender's attorneys and advisors; (ii) any costs, expenses and damages to Avant and Lender and its affiliates resulting from any action, proceeding or investigation seeking to enjoin or otherwise resulting from any matter referred to in this term sheet; and (iii) any claim for brokers or finders fees based on actual or alleged dealings with Borrower or any of its respective affiliates.

32.    Exclusivity      Each of Borrower, Key Principal and Guarantor agree that commencing upon the execution of this summary of terms, Borrower, Key Principal and Guarantor will work exclusively with Lender to procure the Loan and agrees not to, and will cause its Key Principals and affiliates not to, obtain or attempt to obtain debt financing for the Property from a source other than Lender. In the event Borrower, Key Principal and Guarantor obtains dent financing for the Property from a source other than Lender, including without limitation, a refinancing with its existing lender (which shall include any extension of the existing loan), Lender shall be deemed to have earned, and shall be paid, a Break-up Fee in the amount of $160,000, representing of two percent (2.0%) of the Loan Amount (the "Break-up Fee") which constitutes a reasonable estimate of Lender's damages and which shall constitute liquidated damages. The Break-up Fee is in addition to the Deposit which shall be retained by Lender. Guarantor, by her execution of this summary of terms (i) acknowledges that a break-up fee (the "Prior Fee") was earned by Lender as a result of a breach by Borrower of the exclusivity provisions contained in the summary of terms dated July 27, 2015; and (ii) in consideration of Lender waving its right to be paid the Prior

Ms. Orly Gilat
January 27, 2016
Page 6

Fee, agrees to be personally liable for the payment of the Break-Up Fee, in the event it is earned by Lender.

33. Confidentiality

Borrower, Key Principal, Guarantor and their affiliates will keep this term sheet confidential and will not share this term sheet with any third party other than their attorneys, advisors and partners. Lender will keep confidential Borrower's business plans and information; however, Lender may share Borrower's business plan and information with its legal advisors, lenders, investors and professional advisors.

34. Non-Binding Term Sheet

**This summary of terms is non-binding, for discussion purposes only and is neither an express nor implied commitment by Avant, Lender or any of its affiliates to lend or otherwise provide or assist in providing the financing described herein.**

**This term sheet does not purport to summarize all the terms, conditions, representations, warranties and other provisions with respect to the transactions referred to herein. Avant and Lender will have no legal obligation whatsoever to Borrower, Key Principal or Guarantor or any other person unless and until definitive loan documentation is executed by the parties. Avant and Lender may withdraw this summary of terms as a basis for discussion and elect not to make the Loan (or to further revise this summary of terms) at any time, for any or no reason.**

**Notwithstanding the foregoing, from and after the execution of this term sheet, Paragraphs entitled "Deposit," "Indemnification," "Exclusivity," "Confidentiality" and "Non-Binding Term Sheet" which shall be binding on the Borrower, Key Principal and Guarantor.**

35. Governing Law

**The Loan and this summary of terms shall be governed under the law of the State of New York.**

Sincerely yours,

Avant Capital Partners LLC

Patrick J. Sullivan
Partner

Ms. Orly Gilat
January 27, 2016
Page 7

Agreed to and acknowledged by:

W108 Development LLC

By: Orly Gilat
Its: _____Manager_____
Date: _1/27/16_

As to Paragraph 32

By: Orly Gilat
Date: _1/27/16_